IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THOMAS RADFORD,     :
   Plaintiff,     :
           :
vs.          :    CIVIL ACTION 14-0527-KD-C
           :
CEDRIC MARSHALL, *et al.*,   :
   Defendant.    :
           :

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff Thomas Radford, an Alabama prison inmate proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A & B) and General L.R. 72(a)(2)(R), and is now before the Court on various outstanding motions put forth by Radford (Docs. 31-35, 44, 45, 48-50) and Defendants' motions for summary judgment (Docs. 30 & 57).  For the reasons stated below, it is ordered that Radford's non-dispositive motions be granted in part and denied in part. The motions to amend or supplement the complaint (Docs. 44, 49, 50) are to be granted in favor of Plaintiff but the remaining motions (Docs. 31, 32, 33, 34, 35, 48) are to be denied.  In addition, it is recommended that summary judgment be granted in favor of Defendants Sergeant Cedric Marshall, former Alabama Department of Corrections Commissioner Kim T. Thomas, Warden Cynthia Stewart, Lieutenant R. Davis, C.O.I. Bruce A. Fitch, Sergeant E. McQueen, C.O.I

C. Brown, C.O.I. R. Washington, and C.O.I. D. Wetzel, and the claims presented by Plaintiff be dismissed with prejudice.[1]

I.    **Background.**

Plaintiff Radford is currently incarcerated at J.O. Davis/Fountain Correctional Facility ("Fountain"), where he is serving a 28-year sentence for kidnapping and murder convictions. (Doc. 1 at 4, 6). In his complaint, Radford claims that on November 4, 2014, an inmate, who was acting as "shift runner," was responsible for delivering monthly transaction sheets to the inmates in Plaintiff's dorm.[2] Radford asked Sergeant Marshall, the Shift Commander on duty, why the inmate shift runner was allowed to "handle mail/[his] personal property" and was told by Sergeant Marshall that, "we were short of hands so we let him pass them out."[3] (*Id*. at 5).

Additionally, in an amended complaint, Radford states that on January 12, 2015, Lieutenant R. Davis, again, gave an inmate "the U.S. Mail to pass out" to other inmates. (Doc. 25 at 1). And, on February 3, 2015, Radford claims "C.O.I.

---

[1]    To the extent that any defendants have not technically moved for summary judgment, it is appropriate to enter summary judgment on any claims presented against them pursuant to Rule 56(f)(1), Federal Rules of Civil Procedure ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant ...."). The Plaintiff is notified by the issuance of this Order and Report and Recommendation of the reasons for recommending that all Defendants should be granted summary judgment and he will have an opportunity through the filing of objections to the Report and Recommendation to be heard as to why summary judgment would not be appropriate as to any and all defendants.

[2]    An inmate's transaction sheet contains personal information, including one's prison account balance and social security number. (Doc. 43 at 4).

[3]    Sergeant Marshall denies this incident and further denies ever authorizing or approving any inmate to pass out mail to another inmate. (Doc. 29-1). Defendants C.O.I. Brown, C.O.I. Washington, and C.O.I. Wetzel were in the shift office with Sergeant Marshall following the incident and witnessed Radford's conversation with Sergeant Marshall. (Doc. 1 at 4).

Bruce A. Finch gave U.S. Mail to Inmate Bell[] to pass out and Plaintiff has not receive[d] his transaction slip that Inmate Bell was passing out." (*Id.*).  Radford asserts he reported the February 3, 2015, incident to Shift Commander Sergeant McQueen and McQueen "shook his head," "seeing nothing wrong with C.O.I. Bruce A. Finch passing mail over to Inmate Bell to pass out for him." (*Id.*).

In amended complaints, Radford brings forth supplementary claims against supervisory officials, Warden Cynthia Stewart and former Department of Corrections Commissioner Kim Thomas, challenging the conditions of his confinement.  Specifically, Radford alleges he has been without hot water for his showers and heated air from the summer of 2013 until February 2015.  (Docs. 4, 10, 44, 49).  He claims that he was repeatedly told that the heating units would be fixed but they were not, thereby subjecting him to winter temperatures in November 2014 as low as 26 degrees Fahrenheit and wind chills as low as 19 degrees Fahrenheit without heated air or hot water.  (Docs. 4 at 4-5; 10 at 3-4).  Radford claims, due to the defendants' failure to maintain operable heating equipment, he suffered "actual injury" on or about November 13-14, 2014, but fails to articulate any specific injury.  (Docs. 4, 10).

Additionally, in a supplemental pleading, Radford alleges on April 16, 2015, Warden Stewart acted in retaliation against him for filing this lawsuit by failing "to fix the hot water to shower … leaving Plaintiff . . . [to take] a cold shower and [he] got sick."  (Doc. 44 at 1).  Radford states he developed a cough and sore throat and had to been seen by a doctor on May 7, 2015.[4]  (*Id.* at 1, 5, 7).

---

[4]    Plaintiff submitted a sick call request on May 7, 2015, complaining, *inter alia*, "My throat is hurting and I got a cough from the cold shower.  We haven't had hot water to shower with for weeks.  Plus I need my medical profile reviewed."  (Doc. 44 at 6).

Radford brings this action against the defendants asserting violations of 18 U.S.C. §§ 1701, 1702, the Eighth Amendment, and the Administrative Regulations of the Alabama Department of Corrections.  (Doc. 10 at 8; Doc. 25-1 at 2; Doc. 44).  He seeks injunctive and declaratory relief to stop the Alabama Department of Corrections from allowing inmates to handle mail and to order that the heating units be repaired and made operable; he further seeks compensatory and punitive damages, and any other relief the Court deems appropriate for the alleged violations.  (Doc. 10 at 7; Doc. 25-1 at 3).

## II.   Outstanding Motions.[5]

### a.   Motions to Amend (Docs. 44, 49, 50).

Federal Rule of Civil Procedure 15(a) permits a party to amend a pleading once 'as a matter of course at any time before a responsive pleading is served,' or, otherwise, 'only by leave of court or by written consent of the adverse party.'" *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003) (per curiam).  A motion for leave to amend complaint should be granted "when justice so requires" but the denial of a motion to amend has been determined to be appropriate when there is evidence of "undue delay, bad faith, or dilatory motive on [the] part of movant, repeated failure to cure deficiencies by amendments that were previously allowed, undue prejudice to opposing party by virtue of allowance of amendment, futility of amendment, etc. . .."  *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).  Generally, courts should allow for amendments

---

[5]     In addition to the discussed motions, the docket reflects that Plaintiff currently has outstanding motions for law library and legal assistance (Doc. 31), to appoint counsel (Doc. 32), for discovery (Docs. 33, 35), and for status (Doc. 34).  These non-dispositive motions are denied since Plaintiff has failed to provide a factual and legal basis for the motions in light of the findings herein.  The motion for status is deemed moot with the entering of this Report and Recommendation.

to pleadings unless it is absolutely clear that amendment would be futile, giving *pro se* litigants an opportunity to amend his or her complaint to correct any deficiencies.  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).  Rule 15(a) embodies a "policy favoring liberal amendment," *Verizon Del., Inc. v. Covad Communs. Co.,* 377 F.3d 1081, 1091 (9th Cir. 2004); "leave to amend should be . . . granted more liberally to *pro se* plaintiffs," *Lira v. Herrera*, 427 F.3d 1164 (9th Cir. 2005) (quoting *Ramirez v. Galaza*, 334 F.3d 850, 867 (9th Cir. 2003) (internal quotations and alterations omitted), "where no prejudice or disadvantage [is] suffered by the opposing side."  *McDowall v Orr Felt & Blanket Co.,* 146 F.2d 136 (6th Cir. 1944) (citing *Norton v. Larney*, 266 U.S. 511, 516 (1925)).

Keeping in mind the leniency afforded *pro se* plaintiffs, and the established tendency of courts to allow amendments to complaints, the Court hereby grants Plaintiff's "Motion to Supplement Pleadings" (Doc. 44), "Motion for Leave to Supplement Complaint" (Doc. 49), and "Motion for Leave to Amend/Supplement Complaint" (Doc. 50).  Radford's claims, facts, and additional named defendants referenced in these motions are hereby incorporated into Plaintiff's complaint and have been taken into consideration for purposes of deciding if summary judgment is appropriate in this action.

### b. Motion for "Case Number, 84 Summons, and 30 days to Amend" (Doc. 45).

As stated above, liberality in amendment of pleadings is important to assure a party fair opportunity to present his claims and defenses; however, equal attention should be given to the proposition that there must be an end to particular litigation.  *NCI Group, Inc. v. Cannon Servs.,* 2011 U.S. Dist. LEXIS 131908, *16-18, n.9 (N.D. Ga. Nov. 16, 2011) ("The Eleventh Circuit has expressed

particular concern regarding amendments that follow motions for summary judgment.  In *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967), the court stated: 'A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim. Liberality of amendment is important to assure a party a fair opportunity to present his claims and defenses, but equal attention should be given to the proposition that there must be an end finally to a particular litigation. . . . Much of the value of summary judgment procedure . . . would be dissipated if a party were free to rely on one theory in an attempt to defect [sic] a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory.'").  Radford's motion, filed on July 30, 2015, titled "Motion for Case Number, 84 Summons, and 30 day[s] to Amend Complaint" (Doc. 45) is one such motion that comes in conflict with generous amendment rulings and should be denied.

The motion listed approximately 84 defendants' names in the style of the case and stated, "Plaintiff asking for a Case Number and 84 Summons to bring these defendant[s] to Court in the Southern District of Alabama." (*Id*. at 3).  The motion is completely void of any facts or claims against any named defendant and identified no commonality with the current action.  The motion is unintelligible as it lacks sufficient detail for the Court to discern its purpose, much less merit, and for these reasons the motion cannot be entertained. Therefore, the undersigned recommends that Plaintiff's "Motion for Case Number, 84 Summons, and 30 Days to Amend Complaint" be denied.

      **c.**       **Motion for Protective Order against Corizon Health (Doc. 48).**

Plaintiff's motion for a restraining order is directed to Corizon Health ("Corizon"), a third party provider of healthcare services to inmates at Fountain, who is not a defendant to this action.  Plaintiff claims on August 12, 2015, he was interviewed or questioned about his mental wellbeing by a Corizon employee, Ms. Nichols.  (Doc. 48).  Plaintiff avers he has never suffered from any mental illness or taken medication for the same and states that each time he files a lawsuit, "Corizon Health Service come around stating Plaintiff needs medication which is not true."  (*Id*. at 2).   Radford alleges his First Amendment rights, purportedly to bring suit, are being violated by Corizon and seeks relief in the form of "a[n] order to protect."  (*Id*.).  However, Plaintiff Radford has not met his burden of establishing a constitutional violation, nor the needed elements for the Court's intervention.[6]

It is well established that inmates are protected by the First Amendment from retaliation by prison officials for filing lawsuits or administrative grievances.  *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  "To state a first amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right."  *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for

---

[6]   Federal Rule of Civil Procedure 26(c) affords the court discretionary power to enter a protective order where good cause is shown.  "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. . . ."  Fed. R. Civ. P. 26(c)(1)(D).

exercising the right of free speech," *id*., with a practice that is  "not reasonably related to legitimate penological objectives" or take certain actions "with the intent of chilling that First Amendment right." *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995), citing *Turner v. Safley*, 482 U.S. 78, 85-89 (1987).

"To state a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action."  *Flynn v. Scott*, 2006 WL 1236718, *5 (M.D. Ala. 2006) (citing *Donnellon v. Fruehauf Corp*., 794 F.2d 598, 600-01 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003)).

> An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. . . .  Merely alleging the ultimate fact of retaliation, however, is insufficient. . . .  Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to demonstration of a retaliation claim. . . .  If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence.  The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. . . .  Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient evidence that the proffered reason for the adverse decision is a pretext for retaliation.

*Flynn*, 2006 WL 1236718 at 5-6 (citations omitted).  A prisoner "must allege facts showing that the allegedly retaliatory conduct would not have occurred but for

the retaliatory motive." *Hempstead v. Carter*, 2006 WL 2092383, *5-6 (N.D. Fla. 2006) (emphasis added) (citing *Jackson v. Fair*, 846 F.2d 811, 820 (1st Cir. 1988)). "[A] causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. *Id*. (citing *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)). However, "[t]he relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" *Id*. (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). The prisoner must present with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (citations omitted). While a plaintiff may not be held to a heightened burden of proof, *see id*. at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled in part on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Radford presents to the Court no facts or details indicating Ms. Nichols interviewed him in, or for the purposes of, retaliation for the filing of the instant action. The interview was conducted nine months after the filing of the current action. Additionally, Radford does not mention that he was ever placed on medication or diagnosed with an illness subsequent to his interview with Ms. Nichols. Thus, the undersigned finds no evidence that Corizon, Radford's

healthcare provider, has acted unconstitutionally and further finds no reason that a protective order should be entered against Corizon.  Thus, Radford's "Motion for Protective Order Against Corizon Mental Health Services" (Doc. 48) is denied.

### III.     Summary Judgment Legal Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.").  Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116

(11th Cir. 1993); *see also Allen, supra*, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'") (internal citations omitted); *see Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party.").  In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d

538 (1986); *see Comer, supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether Defendants are entitled to summary judgment in this action, the Court has viewed the facts in the light most favorable to Plaintiff. *Comer, supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski, supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp., supra*, 43 F.3d at 599.

## IV.   Discussion.

### a.   Improper Handling of Mail[7]

---

[7]   Former Alabama Department of Corrections Commissioner Kim T. Thomas and Warden Cynthia Stewart are named as Defendants to this claim based solely on their supervisory positions and had no knowledge of inmate mail handling prior to notice per the instant lawsuit. (Doc. 29-3). Additionally, Thomas is not responsible for the daily running or operation of Fountain. (*Id.*).

In order to state a claim upon which relief can be granted in a § 1983 action, Plaintiff must establish a causal connection between each defendant's actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights. *See Frankum v. Chapman*, 2009 U.S. Dist. LEXIS 133760, 2009 WL 1118875, *3 (S.D. Ala. Apr. 24, 2009)(unpublished). Liability for an alleged constitutional violation cannot be established on the basis of *respondeat superior. See Edwards v. Alabama*

On three separate occasions, November 4, 2014, January 12, 2015, and

February 3, 2015, Radford alleges an inmate shift runner was allowed to deliver

his transaction sheet to him,[8] and other inmates at Fountain.  Radford claims

having an inmate runner in possession of another inmate's mail is a violation 18

U.S.C. §§ 1701 and 1702, Alabama Department of Corrections Regulations, and

the Eighth Amendment.

---

*Dep't of Corrs.*, 81 F. Supp. 2d 1242, 1255 (M.D. Ala Jan. 14, 2000) ("A theory of *respondeat superior* is not sufficient to support their § 1983 claim.") (unpublished).  "[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" *Id*. (citations omitted).

"Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully and failed to stop them from doing so.'" *Id*. (citations omitted).  In such instances, Plaintiff must show that the policy or custom was "the 'moving force [behind] the constitutional violation.'" *Pinkney v. Davis*, 952 F. Supp. 1561, 1569 (M.D. Ala. Jan 15, 1997) (citations omitted).  "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendants] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." *Id*. (citations omitted).

The evidence before the Court is uncontroverted that neither Warden Stewart nor former Commissioner Thomas directly participated in authorizing inmate shift runners to hand out inmate transaction sheets on the three enumerated occasions. Further, Radford has not identified any policy or custom involving improper inmate mail handling. Radford has failed to show a causal connection between actions by Defendants Stewart and Thomas and any alleged constitutional violation of mail handling.  Further, he has failed to show that Defendants Stewart and Thomas were deliberately indifferent to his needs.  Accordingly, Defendants Stewart and Thomas are entitled to summary judgment and Radford's claims against them for improper handling of mail must be dismissed as a matter of law.

[8]      Plaintiff Radford uses the terms "mail" and "transaction sheet" interchangeably throughout his pleadings.  Based on a reading of all Radford's claims and facts presented, the Court surmises that Plaintiff's complaint is referring to Defendants' liability for allowing inmates to pass out or deliver the prison inmates' monthly transaction sheets, not United States Mail.  However, the distinction is irrelevant to the Court's analysis of Plaintiff's claims.

The two federal statutes challenged criminalize obstruction of the United

States' Mail.  Section 1701 states:

> Whoever knowingly and willfully obstructs or retards the passage
> of the mail, or any carrier or conveyance carrying the mail, shall be
> fined under this title or imprisoned not more than six months, or
> both.

18 U.S.C. § 1701.  Section 1702 states:

> Whoever takes any letter, postal card, or package out of any post
> office or any authorized depository for mail matter, or from any
> letter or mail carrier, or which has been in any post office or
> authorized depository, or in the custody of any letter or mail
> carrier, before it has been delivered to the person to whom it was
> directed, with design to obstruct the correspondence, or to pry into
> the business or secrets of another, or opens, secretes, embezzles, or
> destroys the same, shall be fined under this title or imprisoned not
> more than five years, or both.

18 U.S.C. § 1702.  Congress' intent in enacting such laws was to protect letters

sent by mail from embezzlement and interference until they reached their

destination by proper delivery from the United States' Postal Service.  *United

States v. McCready*, 11 F. 225, 237 (C.C. W.D. Tenn. 1882).  Thus, these laws are

criminal statutes and do not support a civil cause of action, such as Plaintiff's §

1983 suit.  *See Matson v. Hrabe*, 11-3192-RDR, 2014 U.S. Dist. LEXIS 8135, 2014 WL

273187 (D. Kan. Jan. 23, 2014); *Schowengerdt v. General Dynamics Corp.*, 823 F.2d

1328 (9th Cir. 1987) (finding these sections to be penal statutes governing

criminal offenses, and no private right of action exists under either of these

criminal statutes); *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97 (2d

Cir. 1981) (same); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (same).

Absent some expression of Congressional intent to create a private right of

action, a plaintiff cannot maintain a civil claim against a defendant for violation

of a federal criminal statute.  *See, e.g., Adventure Outdoors, Inc. v. Bloomberg*, 552

F.3d 1290, 1303 (11th Cir. 2008) (rejecting notion that Congress authorized "a federal private right of action any time a civil plaintiff invokes a federal criminal statute").  Nothing in the text of § 1701 or § 1702 expressly or impliedly creates a private right of action, and federal courts have consistently refused to recognize civil claims for mail-tampering or obstruction crimes.  *See, e.g., Brett v. Brett*, 503 F. App'x 130 (3rd Cir. 2012) (finding no basis for civil liability in plaintiff's claim that defendants opened his mail, in violation of 18 U.S.C. § 1702, because "criminal statutes do not give rise to civil liability"); *McFarlane v. Roberta*, 891 F. Supp.2d 275, 285 (D. Conn. 2012) (rejecting plaintiff's civil claim for violation of criminal statute prohibiting mail tampering because Congress did not intend to create a private, civil cause of action for violations); *Durso v. Summer Brook Preserve Howmeowners Ass'n*, 641 F. Supp. 2d 1256, 1268 (M.D. Fla. 2008) (opining that 18 U.S.C. § 1705 "provides for criminal penalties but does not create civil liability," and dismissing plaintiff's civil cause of action predicated on violation of § 1705); *Robinson v. Hubbard*, 07-CV-2051 W (AJB), 2008 U.S. Dist. LEXIS 33486, 2008 WL 1833495, *2 (S.D. Cal. Apr. 23, 2008) ("the federal statutes criminalizing mail tampering do not provide a private civil cause of action").  For these reasons, Defendants are plainly entitled to summary judgment on Radford's claim that Defendants violated 18 U.S.C. §§ 1701, 1702.

Next, Radford alleges in his complaint and opposition to Defendants' motion for summary judgment that Defendants violated Alabama Department of Corrections ("ADOC") Administrative Regulations.  (Doc. 43 at 1).  The ADOC Administrative Regulations provide:

> 7.  At no time shall mail be distributed or handled by an inmate or be accessible to any inmate other then the addressee.

8. A staff person shall deliver incoming mail to the inmate(s) to whom it is addressed.

ADOC, Admin. Reg. 448, V., 7-8.  While defendants deny that the ADOC regulations were not followed (Docs. 29-1, 29-2), the Court accepts as true the nonmovant's, Radford's, evidence on a motion for summary judgment. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant ...."). However, Radford's allegations do not provide facts that convey a plausible claim for a violation of constitutional right.  At best, Radford has asserted that Defendants violated a state regulation; however, such a violation does not necessarily demonstrate a violation of the Constitution.  *Smith v. State of Georgia*, 684 F.2d 729, 732 n.6 (11th Cir. 1982) ("Not every violation of a state agency of its own rules rises to the level of a [constitutional] infringement.").

Courts have regularly held that interference with an inmate's "legal mail" implicates an inmate's right of access to courts and free speech as guaranteed by the First and Fourteenth Amendments of the United States Constitution. *Procunier v. Martinez*, 416 U.S. 396, 412-13, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989).  Prison officials have a responsibility to forward mail to inmates promptly.  *Bryan v. Werner*, 516 F.2d 233, 238 (3d Cir. 1975); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for a violation of the First Amendment.), *but see Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (A temporary delay or isolated incident of delay does not

16

violate a prisoner's First Amendment rights.).  Additionally, "censorship of prisoner mail, whether incoming or outgoing, impinges on the interest in communication of both the inmate and the nonprisoner correspondent."  *Saxbe v. Washington Post Co.*, 417 U.S. 843, 865, 94 S. Ct. 2811, 41 L. Ed. 2d 514 (1974).  However, there are no federal laws mandating which specific persons may handle or pass out a prisoner's mail once deposited by the U.S. Postal Service in the mailroom at the prison; this is a policy and regulatory issue left for prison administration.  *See Lewis v. Sec'y, DOC*, 2:10-cv-547-Ftm-29DNF, 2013 U.S. Dist. LEXIS 134140, 2013 WL 5288989 (M.D. Fla. Sept. 19, 2013) ("[T]he Postal Operations Manual of the United States Post Office states that '[m]ail addressed to inmates at institutions is delivered to the institution authorities who, in turn, deliver the mail to the addressee under the institution's rules and regulations.' United States Postal Operations Manual § 615.1 (2009).").

Inasmuch as Radford does not have a liberty interest that was impacted by the handling of mail, and his claim regarding a violation of a regulation does not sound in the nature of a constitutional violation, the Court finds that his claim for a violation of the ADOC's regulations is not of constitutional magnitude and, therefore, should be dismissed.  *See Adams v. Green*, 2:07-CV-309-WHA (WO), 2007 U.S. Dist. LEXIS 44676, 2007 WL 1663094 (M.D. Ala. May 18, 2007) (unpublished) (Complaint was dismissed as frivolous where prison officials engaged in conduct violating their own administrative regulations but not the Eighth or Fourteenth Amendment.).

Lastly, Radford asserts Defendants acted with deliberate indifference to his financial safety and security by allowing inmate runners to possess and deliver monthly transaction sheets to inmates.  He claims:

By another inmate having Plaintiff Mail/Transaction slip with Plaintiff amount of money, S.S.# poses a dangerous position for Plaintiff and a risk that PMOD account be stolen from Plaintiff by phone on the wall here in prison.  You can take money off your account by phone by dialing my AIS# 156846 and my last social security 4 dital[sic] 0000 and the inmate can use my I.D. number and call any where he wanted.  In one month a inmate can clear my PMOD account without me knowing it.   We only get one transaction slip per month.  By a inmate having my transaction slip put my life in danger here among murder, killers, robbers, etc. knowing how much Plaintiff has on his transaction slip so let us not play down this transaction slip saying it doesn't amount to anything . . . I rather a inmate have my mail instead of my PMOD account transaction slip.

(Doc. 43 at 4-5) (alterations in capitalization).  To establish a successful Eighth Amendment claim against the Defendants, Radford must prove that there was "a substantial risk of serious harm," that the defendants were subjectively deliberately indifferent to that risk, and causation.  *Hale v. Tallaossa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995); *see also Farmer v. Brennan*, 511 U.S. 825, 832-34, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  This includes an objective and subjective component.  The objective standard requires that the alleged deprivation be "objectively, 'sufficiently serious,'" *Farmer*, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)), and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . ., but must be balanced against competing penological goals." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotation marks omitted)). The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind."  *Sims*, 25 F.3d at 983-84 (citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)).  This component "follows from the principle that 'only the

unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quotation and citation omitted).  In prison conditions cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. *Id.* (citations omitted).  It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).  A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer*, 511 U.S. at 844-45 (citations omitted).

While the Court recognizes Radford's fears and respects the severity of possible damage should his personal account information get into the wrong hands, Radford has failed to establish the necessary elements of an Eighth Amendment violation.  The passing out of inmate mail by a non-officer or prison staff member may be considered irresponsible or even negligent, but it is hardly objectively serious and against human decency.   *See Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (A defendant can never be held liable under § 1983 for negligence.); *see also Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).  And, Radford fails to present one scintilla of evidence that Defendants allowed an inmate to pass out Radford's transaction sheet with the intention of causing Radford, or any other inmate, harm.  Radford's own facts dilute and belie the proposition that any defendant acted with a culpable state of mind, as he claims upon notifying Sergeant Marshall of the mail infraction on November 4, 2014, Sergeant Marshall stated, "we were short of hands so we let him pass them out" (doc. 1 at 5) and when he reported the February 3, 2015 mail

incident, Sergeant McQueen simply "shook his head," "seeing nothing wrong with C.O.I. Bruce A. Finch passing mail over to Inmate Bell to pass out for him." (Doc. 25). Defendants' responses are devoid of subjective recklessness or a knowledge of harm to Plaintiff. *Farmer*, 511 U.S. at 839-40 (The "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment.) There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not . . . ." *Id*. at 838.

Additionally, Radford fails to show any harm as a result of the alleged practice of allowing an inmate to pass out his mail. *See Michael v. Arpaio*, 06-2560-PHX-DGC, 2006 U.S. Dist. LEXIS 88715, 2006 WL 3499917 (D. Ariz., December 4, 2006) (Plaintiff inmate's claim that jail officers hand out mail without checking inmate ID's lacked merit because he was not "injured in any way by the alleged failure to check inmate identification in connection with the distribution of mail"). Courts have held causation to be a necessary element in prison mail handling cases and find no liability where the plaintiff suffered no harm, despite the notable potential for harm. For example, in *Northup v. Bell*, the inmate plaintiff complained of the prison's practice of handing out mail without checking inmate IDs and speculated that he could be harmed by other inmates if they were to obtain his mail and begin writing to his family, including pedophiles writing to and establishing relationships with his grandchildren. *Northup*, 6:11cv222, 2012 U.S. Dist. 95060, *10 (E.D. Tex., June 12, 2012). The court opinioned that Northup lacked a valid constitutional claim and could not pursue a § 1983 action based on "a mere remote or speculative possibility of injury." *Id*.

at *11 (citing *Reichenberger v. Pritchard*, 660 F.2d 280, 285 (7th Cir. 1981); *Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir. 1987)).

The allegations in the instant complaint do not suggest a systematic pattern or practice of violating Plaintiff's constitutional rights, nor does Plaintiff succeed in showing Defendants acting with the requisite intent necessary to prove deliberate indifference.  Further, Plaintiff has not made any showing that he was harmed in any way.  In consideration of all these factors, the complaint fails to state a constitutional claim upon which relief may be granted.  It is recommended that these claims against all defendants be dismissed with prejudice.

### b.  Conditions of Confinement.

In his complaint, Radford claims he suffered "actual injury" on November 13 and 14, 2014, due to the lack of heated air and hot water for showers at Fountain. [9]  (Doc. 10 at 3).  Plaintiff claims the faulty heating systems at the prison equate to cruel and unusual punishment in violation of the Eighth Amendment.

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.  To demonstrate a violation of an Eighth

---

[9]     The exact time frame of his claim is a bit unclear.  Radford first alleges he has been without heat throughout the summer and fall of 2013 and "will continue to suffer in the winter or fall of 2014."  (Doc. 4 at 5; 10 at 4).  Radford's response to Defendants' motion for summary judgment, however, claims he was without heat (or hot water) for four or five months before filing his complaint in November of 2014, but notes that the problem actually started prior to that time period.  (Doc. 43 at 2).  While the fluctuating dates are perplexing, they are not controlling and, in this action, are immaterial, as Plaintiff fails to carry his burden of establishing his claim.

Amendment right in a section 1983 prison conditions action, a plaintiff must prove three elements: (1) "a condition of confinement that inflicted unnecessary pain or suffering"; (2) "the defendant's deliberate indifference to that condition;" and (3) "causation." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164, 114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994)(internal quotation marks and citations omitted). "The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries." 995 F.2d at 1538-39.

      1.     Lack of Hot Showers.

      Radford makes a general allegation that he was denied hot showers while imprisoned at Fountain and claims he was injured on November 13 and 14, 2014 by the failure of Defendants to "replace broken heat system that supply heat and the hot water system." (Doc. 10 at 3). The Court surmises from the entirety of pleadings that the heat pump for the water at Fountain was not working or faulty from the summer of 2013 through February 2015, when Warden Stewart avers, and Plaintiff does not deny, all heating units were operable. (*See* Doc. 29 at 3; Doc. 29-2; Doc. 43 at 2). While Radford asserts he was continually denied hot showers, he fails to provide evidence that he was deprived of a single human need, or causally connect an injury sustained in connection with this complained of condition.[10] Additionally, Defendants provide that while hot water was

---

[10]     The only injury Radford purports to have sustained is "a cold." He claims he contracted a cold from taking a cold shower on April 16, 2015, when Warden Stewart retaliated against him for filing this lawsuit and forced him to take a shower without hot water. (Doc. 44 at 1). Radford attaches, as proof of his injury, a sick call request that he initiated on May 7, 2015, complaining of a cough and sore throat, approximately three weeks after he claims to have taken a cold shower. (*Id.* at 1, 5, 7). This allegation is

inoperable in Plaintiff's dorm, Plaintiff Radford and other inmates were allowed to shower in other dorms.[11]  (Doc. 29 at 5).

"[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Rather, all that is required under the Eighth Amendment is that prison officials "ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates[.]'" *Farmer*, 511 U.S. at 832 (citations omitted); *see also Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985) (finding that the Eighth Amendment requires that a prisoner receive "reasonably adequate food, clothing, shelter, and sanitation.").  "[E]xtreme deprivations are required to make out a conditions-of-confinement claim," "[b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society[.]'" *Hudson*, 503 U.S. at 9 (citations omitted).  "While an inmate 'need not await a tragic event' before seeking relief, . . . he must at the very least show that a condition of his confinement 'pose[s] an unreasonable risk of serious damage to his future health' or safety. . . ." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citations omitted).  "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 305.  Prison conditions constitute

---

vague, tenuous, and too remote in time to attribute it as an act of retaliation or a suffered injury due to a cold shower.  Radford fails to carry his burden of proving retaliation by Warden Stewart (see, *supra*, Section II., c. for the standard of proving retaliation) or causally connecting any injury to his conditions of confinement claim.

[11]     Radford does not dispute that he and other inmates were allowed to shower in another dormitory, but complains that the alternate dormitory's shower was unfit as it occupied only three working showerheads for all inmates to share.  (Doc. 43 at 1).

cruel and unusual punishment only when they result in the "unquestioned and serious deprivation of basic human needs." *Rhodes*, 452 U.S. at 347.

Radford's claim of showers lacking hot water does not rise to a constitutional violation. Courts have held that inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, *see, e.g., Green v. Ferrell*, 801 F.2d 705, 771 (5th Cir. 1986), but frequent showers have been found not to be mandated, *see Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988), *cert. denied*, 488 U.S. 9018, 109 S. Ct. 260, 102 L. Ed. 2d 248 (1988) (holding that one shower a week is constitutionally sufficient). Likewise, courts have consistently found that the Constitution does not mandate hot showers for inmates as a necessity to life. *See Lopez v. Robinson*, 914 F.2d 486, 492 (4th Cir. 1990) (noting that low cell temperatures must cause serious medical or psychological harm to implicate the Eighth Amendment); *Hopkins v. Klindworth*, 556 F. App'x 497, 499 (7th Cir. 2014) ("Prisoners do not have a constitutional right to hot water.); *Kennedy v. Gusman*, 06-5274 SECTION: "B" (1), 2007 U.S. Dist. LEXIS 32711, *8-9 (E.D. La. May 2, 2007) ("[E]ven if plaintiff's allegations are true regarding the lack of hot water for showers, there appears to be no support for a proposition that prisoners have a constitutional right to hot showers.); *Carter v. Dawson*, 1:07-cv-01325-AWI-BAM (PC), 2014 U.S. Dist. LEXIS 121333, *49 (E.D. Cal. Aug. 29, 2014) (Finding no clearly established right to hot showers in prison and noting "[o]nly extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment."). Thus, Radford has failed to state a claim upon which relief may be granted, and Defendants are entitled to summary judgment on this claim.

### 2. Lack of Heat in Winter Months.

On November 16, 2014, Plaintiff filed his amended complaint alleging unconstitutional confinement claims, namely that he was being held at Fountain without indoor heat during the winter months (and hot showers).  Warden Stewart avers that as of February 2015 all heaters and hot boilers are operable at Fountain and that there is a full time maintenance staff assigned to Fountain to handle such issues.  (Doc. 29 at 3; Doc. 29-2).  Radford does not dispute that the heating units are now operable (*see* doc. 43 at 2) but complains of the length of time it took to repair the units.  (Doc. 43 at 2).  Radford states "it took from 10-13-14 to February 2015 to fix and have hot water [and] heat to keep warm," and alleges this equates to cruel and unusual punishment.  (*Id*.).

> The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). Although the Amendment does not require comfortable prisons, it prohibits inhumane ones. *Id*. The Eighth Amendment guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004)). "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety." *Harris v. Thigpen*, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in *Collins v. Homestead Corr. Inst.*, 452 F. App'x 848, 850-851 (11th Cir. 2011)). "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required . . . ." *Thomas v. Bryant* 614 F.3d 1288, 1304, 1306-07 (11th Cir. 2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

*Magwood v. Beem*, 4:14cv314-MW/CAS, 2015 U.S. Dist. LEXIS 22875, *42 (N.D. Fla. Jan. 27, 2015).

It is well settled that prisoner claims of inadequate heating, cooling, and ventilation, as Radford asserts, are governed by the Eighth Amendment.  *See*

*Chandler v. Crosby*, 379 F.3d 1278, 1294 (11th Cir. 2004). The Eleventh Circuit has

examined such claims and determined:

> [T]he Eighth Amendment is concerned with both the "severity" and the "duration" of the prisoner's exposure to inadequate cooling and ventilation. *Cf. Dixon*, 114 F.3d at 643 ("It is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional."). That is, "[a] condition which might not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time." *Id.* Severity and duration do not necessarily form a perfect sliding scale, but our analysis should be informed by a consideration of both factors.
>
> . . .
>
> [A] prisoner's mere discomfort, without more, does not offend the Eighth Amendment. *See Woods*, 51 F.3d at 581 ("While the temperature in extended lockdown may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment."). Eighth Amendment claims are governed by the standards we discuss at length in Part III.A, *supra*. In particular,
>
>> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.
>
> *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Chandler*, 379 F.3d at 1295. Courts have found exposure to cell temperatures

violate the Eighth Amendment when the totality of the conditions of

confinement are sufficiently "extreme" to create "an unreasonable risk of serious

damage to [a prisoner's] future health or safety" and the defendants acted with

deliberate indifference to that risk of harm. *Id.* at 1289; *see, e.g., Dixon v. Godinez*,

114 F.3d 640, 643 (7th Cir. 1997) (temperatures in cell averaging 40 degrees

Fahrenheit and regularly falling below freezing for four consecutive winters); *Del Raine v. Williford*, 32 F.3d 1024, 1036 (7th Cir. 1994) (prisoner housed in cell with broken windows in which temperature was near outdoor temperature including a period of two days where wind chills were from -40 to -50 degrees Fahrenheit); *also see Henderson v. DeRobertis*, 940 F.2d 1055, 1056-1061 (7th Cir. 1991) (finding an Eighth Amendment violation clearly established where conditions included broken cell windows, below freezing temperatures inside the cell, no winter clothing, lack of extra blankets, and a malfunctioning heating system over period of four days in which temperature fell to -22 degrees Fahrenheit and a windchill of -80 degrees Fahrenheit outside).

However, courts have determined no constitutional violation occurred when the conditions of confinement include allegations of only uncomfortable temperatures.  *See, e.g., Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (concluding that while the temperature may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment); *Mays v. Springborn*, 575 F.3d 643, 648-49 (7th Cir. 2009) (prisoner's allegations of exposure to cold did not rise to level of objectively serious harm necessary to show Eighth Amendment violation where prisoner alleged he caught colds, suffered hurt ears and numb hands, and felt frostbite, but failed to show he was exposed to cold for long periods of time or that he suffered anything more than usual discomforts of winter); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (high temperatures that were the result of allegedly inadequate cooling were not a violation of the Eighth Amendment even though they aggravated Plaintiff's sinuses and were uncomfortable); *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977) (federal court's

involvement occurs only when there are extreme temperatures that are injurious to an inmate's health); *Thomas v. Rodgers*, 3:13-cv-1052-J-32TEM, 2013 U.S. Dist. LEXIS 161709 (M.D. Fla. Oct. 16, 2013) (no Eighth Amendment violation when prisoner's failure to allege how cold the temperature was in his cell, that he suffered any injury from his 36-hour exposure to cold temperatures, that the defendants knew of a risk of serious harm to plaintiff, or that he ever informed the defendants that he was uncomfortably cold); *King v. Henry*, 5:09cv365/MCR/EMT, 2010 U.S. Dist. LEXIS 115185, *20, 2010 WL 4386539 (N.D. Fla. Sept. 24, 2010) (forty-eight day exposure to cold temperatures with access to a winter coat did not pose a risk of damage to plaintiff's health "so grave that is violates contemporary standards of decency to expose anyone unwillingly to such risk").

At best, the record shows that Defendants might have been negligent, but that falls short of deliberate indifference. Thus, Radford has failed to carry his burden of establishing an Eighth Amendment Constitutional violation, as he failed to show Defendants acted with deliberate indifference to his health or safety. First, he fails to show that the conditions under which he was held were objectively harmful. While Radford states he was without heat on a day the wind chill factor was as low as 19 degrees Fahrenheit, Radford fails to specify or approximate the temperature of his cell; he never claims that there was a broken window letting in the bitter cold elements; he does not allege he was forced outside without proper warm clothing in the winter temperatures. In fact, Radford presents no evidence of any extreme cold experienced but the conclusory allegation that his cell was without heat on a day with temperatures as cold as 26 degrees Fahrenheit and a wind chill of 19 degrees Fahrenheit.

Second, Radford fails to raise a genuine issue of material fact regarding whether Defendants had knowledge of a risk to his health or safety.  Radford does not submit that he filed formal grievances or identify officers to whom he complained, and the pleadings certainly lack evidence that Defendants subjectively believed the conditions constituted an unreasonable risk to Plaintiff. Third, Radford has failed to identify a single injury suffered due to the lack of heating.[12]  The absence of specific facts to support this claim precludes Plaintiff from establishing a genuine issue of material fact concerning a deprivation of a single human need.  For all these reasons, the undersigned finds Radford has not carried his burden to overcome Defendants' motion for summary judgment.

**V.     Conclusion.**

Based on the foregoing analysis, the undersigned concludes that there are no genuine issues of material fact, and that all Defendants are entitled to judgment as a matter of law on all claims and causes of action interposed by Plaintiff.

Therefore, it is ordered that:

1.     Plaintiff's motions to amend or supplement the complaint (Docs. 44, 49, 50) are **granted;** and

2.     Plaintiff's other motions (Docs. 31, 32, 33, 34, 35, 48) are **denied.**

Furthermore, it is recommended that:

---

[12]     Radford states that "[o]n or about November 13, 14, 2014 the Defendants, (Kim T. Thomas; Cynthia Stewart along with their agents, did cause actual injury to the Plaintiff, (e.g. by not fixing, or replacing broken heat system that supply heat and the hot water system too.)" (Doc. 10 at 3); however Radford fails to identify any sustained injury in any of his filings to the Court.

1.      Plaintiff's Motion for "Case Number, 84 Summons, and 30 days to Amend" (Doc. 45), construed as a motion to amend, be **denied;** and

2.      Defendants' motions for summary judgment be **granted** on all counts and that Radford's action against Defendants Sergeant Cedric Marshall, former Alabama Department of Corrections Commissioner Kim T. Thomas, Warden Cynthia Stewart, Lieutenant R. Davis, C.O.I. Bruce A. Fitch, Sergeant E. McQueen, C.O.I C. Brown, C.O.I. R. Washington, and C.O.I. D. Wetzel be **dismissed with prejudice**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4.  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection

that merely incorporates by reference or refers to the briefing before the

Magistrate Judge is not specific.

      **DONE** this 10th day of December 2015.

                     /s/WILLIAM E. CASSADY
                     UNITED STATES MAGISTRAGE JUDGE